**THIS MEMORANDUM DECISION AND ORDER HAS BEEN REDACTED FOR PUBLIC FILING AND PUBLICATION. THIS REDACTED VERSION IS THE ONLY VERSION AUTHORIZED FOR PUBLICATION AND CITATION.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
CONVOLVE, INC. and MASSACHUSETTS
INSTITUTE OF TECHNOLOGY,

    MEMORANDUM DECISION
    AND ORDER
    00 CV 5141 (GBD)

    -against-
                    Plaintiffs,

COMPAQ COMPUTER CORP. and SEAGATE
TECHNOLOGY LLC,

                    Defendants.

------------------------------------------------------------x
GEORGE B. DANIELS, District Judge:

Plaintiffs Convolve, Inc. ("Convolve") and Massachusetts Institute of Technology ("M.I.T.") bring suit, alleging that defendants Compaq Computer Corp. ("Compaq") and Seagate Technology LLC ("Seagate") have misappropriated plaintiffs' proprietary technology and infringed several of their patents. Plaintiffs seek injunctive relief and monetary damages.

Defendant Seagate filed motions for summary judgment.[1] Seagate's motion for summary judgment dismissing Convolve's claims of fraud, tortious interference with contract, breach of confidence, and violation of California's unfair competition statute is granted. Seagate's motion for summary judgment on Convolve's breach of the covenant of good faith and fair dealing is denied. Seagate's motion for summary judgment dismissing Convolve's claim of misappropriation of alleged trade secret 3D is denied.[2]

---

[1] Specifically, Seagate moved for summary judgment on Convolve's causes of action which Seagate argues are preempted by California trade secret law, Convolve's claim of misappropriation of alleged trade secret 3D, and on Convolve's claims of misappropriation of alleged trade secrets 1A, 2D, 4A, 4B, 4C, 4D, 4E, 7B, 7C, and 7D.

[2] On December 7, 2005, the parties agreed to withdraw Seagate's motion for summary judgment on Convolve's claims of misappropriation of alleged trade secrets 1A, 2D, 4A, 4B, 4C, 4D, 4E, 7B, 7C, and 7D from the Court's consideration. See Transcript of Oral Argument at 25-26. Both Seagate and Convolve agreed, after discussion on the record, that Convolve "will [be] preclude[d]. . .from bringing any litigation against Seagate for violation of trade secrets with regard to these ten items that's based on activity that has occurred prior to [December 7, 2005]." Id. at 25.

## BACKGROUND

Plaintiffs allege that the "defendants – without permission from or compensation to plaintiffs – have incorporated plaintiffs' technology in their Research and Development, manufacturing, and assembly processes, and installed plaintiffs' technology in Seagate's disk drives. . ." Amended Complaint at ¶ 2. They further allege that Seagate did so "not by innovation and honest competition, but by outright deceit, misappropriation of plaintiffs' intellectual property, patent infringement, and unfair and unlawful business acts and practices." Id.

Convolve is "the exclusive licensee [from MIT] of Input Shaping®, a patented software motion control technology" which is covered by MIT's United States Patent No. 4,916,635 (the "'635 patent") and Convolve's United States Patent No. 5,638,267 (the "'267 patent"). Id. at ¶ 3; see also Affidavit of Debra Brown Steinberg, Ex. 6 (7/12/00 Affidavit of Dr. Neil Singer) at ¶ 2 ("Steinberg Affidavit, Ex. 6"). This technology enables a design engineer to measure vibrations generated by a disk drive. Using the Convolve technology, the design engineer can create a table of numbers which are then downloaded to the disk drive controller. These numbers are then used to reduce the disk drive's vibrations while still allowing the drive to move as quickly as possible. Steinberg Affidavit, Ex. 6 at ¶ 4. This disk drive technology also includes a control panel feature called Quick and Quiet™ which "permits an end user to customize the disk drive's speed and acoustics." Id. at ¶ 5. In the course of developing these technologies, Convolve developed a number of trade secrets and the subject matter for United States Patent No. 6,314,473 (the "'473 patent"), and International Patent Application No. WO 99/45535 (the "PCT"). Amended Complaint at ¶ 4. The '635, '267, and '473 patents and Convolve's trade secrets are collectively referred to as "Convolve's disk drive technologies." Id.

In early 1998, Dr. Singer, the founder and president of Convolve, contacted Compaq to explore a potential licensing arrangement between the parties. Steinberg Affidavit, Ex. 6 at ¶ 11. Prior to disclosing any proprietary technology to Compaq, the parties executed a Reciprocal Nondisclosure Agreement ("NDA"). Convolve successfully demonstrated its technology to Compaq at Compaq's

Houston, Texas headquarters. After the demonstration, Compaq decided to further evaluate Convolve's technology. Because Compaq did not manufacture disk drives, it enlisted the assistance of Seagate, one of its principal disk drive suppliers, to "help evaluate the technology."[3] Steinberg, Ex. 12 (12/12/02 Deposition of Richard Tomaszewski) at 63:5-6 ("Steinberg Affidavit, Ex. 12"). Convolve and Seagate signed several NDAs in 1998 in order for Seagate to evaluate Convolve's technology for potential licensing. Pursuant to all of these agreements, neither Compaq nor Seagate is permitted to use or disclose Convolve's confidential information without Convolve's express written consent. Amended Complaint at ¶ 8. Specifically, "[e]ach of these agreements clearly and unambiguously define[d] Compaq and Seagate's obligations not to use Convolve's disk drive technologies for any purpose other than exploring a potential transaction with Convolve, and to maintain Convolve's disk drive technologies in a confidential manner." Id. at ¶ 28.

Convolve gave a presentation regarding its Input Shaping® technology and its application to computer disk drives to both Compaq and Seagate representatives at Compaq's Houston facility. Id. at ¶ 34. After the meeting, Dr. Singer sent a follow-up letter on October 19, 1998 to Seagate stating that Convolve "considers the oral disclosure of implementation details, techniques, approaches, and test results presented to Compaq and Seagate and the discussions that followed in [the] meeting to be confidential and covered" by the NDA. See id. at ¶ 37. Information regarding the "Quick and Quiet™" control panel feature was disclosed by Convolve to Compaq. Id. at ¶ 39. In a letter, Convolve informed Compaq that the disclosed information was confidential. Id. Compaq representatives assured Convolve via telephone and e-mail that measures would be taken to ensure the confidentiality of all information concerning the "Quick and Quiet™" feature. Id. Convolve alleges that "Compaq at this time or shortly thereafter disclosed to Seagate in violation of the Compaq NDA the information it had learned from

---

[3]Richard Tomaszewski, Manager of Advanced Technology in Compaq's Storage Products Division, wrote to Seagate: "We are looking for help from Seagate to determine if Convolve's technology and claims are real and worth pursuing further. We have met with Convolve previously and were impressed with their demo. Their claims sounded reasonable[;] however, we are left with many questions that we really needed a drive supplier to answer." Steinberg Affidavit, Ex. 12 (Doc. No. CPS0008210).

Convolve about its 'Quick and Quiet™' feature." Id. at ¶ 42. A senior Compaq engineer charged with evaluating the new technology, told Convolve that he became aware of, and even contacted Compaq's legal department, regarding Compaq's improper disclosure of information regarding the "Quick and Quiet™" feature to Seagate, and Seagate's subsequent theft of Convolve's confidential information. Id. at ¶ 41-42. Convolve further alleges that ". . .defendants had determined to use plaintiffs' Input Shaping® technology and Convolve's 'Quick and Quiet™' feature in Compaq's and Seagate's products – in clear violation of the NDAs – and neither defendant ever intended to use Convolve's information for the one purpose permitted by the NDA, i.e., to explore a licensing agreement with Convolve." Id. at ¶ 44.

Convolve contends that in order to further its efforts to misappropriate Convolve's proprietary information, Seagate sent engineers "that were attempting, unsuccessfully, to develop the very technologies that Convolve was then successfully demonstrating to Seagate" to meetings with Convolve. Id. at ¶50. Convolve claims that after attending those meetings, a Seagate engineer, "essentially copied Convolve's methodology . . .[and] after six years of failed attempts, [was] able to achieve results similar to those achieved by Convolve." Id. at ¶ 51. Thus, Convolve alleges that "after six unsuccessful years, [Seagate's] sudden 'success' shortly after having had access to Convolve's proprietary technology is no coincidence: it is, plain and simple, misappropriation of Convolve's trade secrets and proprietary technology in violation of the NDAs." Id. at ¶ 53. On June 7, 2000, Seagate issued a press release announcing a new disk drive technology called "sound barrier technology." Id. at ¶ 58. Convolve alleges that "[t]he Seagate Press Release confirms that Seagate used the confidential information that Convolved disclosed . . . to develop technologies that are identical to Convolve's disk drive technologies. . ." Id. at ¶ 59. On June 28, 2001 Seagate introduced a new drive, the Barracuda ATA IV, which contained sound barrier technology and issued a press release stating: "[s]ilence has been a sort of 'holy grail' in PC engineering circles. . . .Now we've devised a breakthrough that makes it real." Id. at ¶

62. Convolve alleges that "Seagate did not 'devise' a 'breakthrough' to create a 'superfast' and 'silent' drive; instead to achieve that result, it stole the Convolve disk drive technologies. . ." Id.

Thus, Convolve claims that "Compaq and Seagate never had any intention of honoring their contractual commitments under the confidentiality agreements or their legal obligation to refrain from misappropriating Convolve's disk drive technologies." Id. at ¶ 9. Instead, Convolve contends that defendants set out to obtain plaintiffs' technology and pass it off as their own. Id. In order to allegedly achieve these purposes, "Compaq solicited and encouraged Seagate (and other drive makers) to 'develop' this technology by disclosing to Seagate and others the confidential information provided to it by Convolve pursuant to the NDAs." Id. at ¶ 11. Convolve further alleges that ". . . within a few months of signing these agreements, defendants, in violation of the NDAs, used confidential information received from Convolve to 'develop' (i.e., steal and pass off as their own) the very Convolve technology that was protected by the NDAs." Id. at ¶ 33. It is on this basis that Convolve accuses the defendants of misappropriating Convolve's disk drive technologies in violation of the law, their contractual commitments, and their duty of good faith to Convolve. Id. at ¶ 12.

Convolve and M.I.T. filed a complaint in this action against Compaq and Seagate alleging breach of contract, fraud, trade secret misappropriation, patent infringement, and tortious interference. An amended complaint was filed which additionally alleged infringement of a new patent, unfair competition pursuant to California Business and Professions Code § 17200, *et seq.*, breach of confidence, and breach of the covenant of good faith and fair dealing. Convolve seeks "to recover damages for Compaq and Seagate's breach of their confidentiality agreements with Convolve, their theft of Convolve's trade secrets, and their infringement of plaintiffs' patents . . . [and] to prevent defendants from continuing to use Convolve's disk drive technologies that either were stolen from plaintiffs and/or that infringe plaintiffs' patents." Amended Complaint at ¶ 13.

Convolve's breach of contract claim against Seagate states that Convolve "disclosed confidential and/or trade secret information," and that by misusing such "confidential and/or trade secret

5

information" in its drives, Seagate has materially breached the NDA. Id. at ¶¶ 74-75. Convolve's tortious interference with contract claim against Seagate states that by encouraging Compaq to disclose "confidential and/or trade secret information," Seagate willfully and intentionally induced Compaq to breach its NDA. Id. at ¶ 84. Allegedly, Seagate willfully, intentionally, and maliciously induced Convolve to disclose "confidential and/or trade secret information" which Seagate misused, according to Convolve's fraud claim against Seagate. Id. at ¶¶ 92-94. Convolve's misappropriation of trade secrets claim against Seagate alleges that much of Convolve's disk drive technologies were protected trade secrets at the time of disclosure; Seagate acquired those trade secrets "under an express contractual duty to maintain the confidentiality of those secrets"; and Seagate misappropriated Convolve's trade secrets by ". . .implementing Convolve's confidential trade secret information on Seagate's drives." Id. at ¶¶ 103-05. Additionally, Convolve accuses Seagate of unfair competition in violation of California Business and Professions Code § 17200, *et seq.*, "by engaging in the conduct described herein." Id. at ¶ 122. Convolve's breach of confidence claim against Seagate seeks damages for Seagate's "willful, intentional and malicious misuse of the novel, confidential and/or trade secret information" disclosed. Id. at ¶ 130.

Convolve's Prayer for Relief requests (1) an injunction barring defendants from further infringing plaintiffs' patents; (2) an injunction barring Seagate from disclosing or using in any way Convolve's trade secrets; (3) a headstart injunction barring Seagate from disclosing or using in any way those of Convolve's former trade secrets that were disclosed to Seagate while the information was a trade secret; (4) "an accounting of defendants' profits, gains and advantages derived from the foregoing infringement of plaintiffs' patents and misappropriation of Convolve's trade secrets;" as well as compensatory, punitive, and treble damages; costs, interest and attorneys fees; and restitution and disgorgement of defendants' profits and unjust gains.

Seagate served interrogatories on Convolve requesting the amount and nature of the damages alleged. See Declaration of Andrew S. Dallmann, Ex. 9 at 7. Convolve responded that its damages

6

were measured by royalty revenue, or alternatively by Seagate's unjust enrichment and punitive damages.[4]

## DISCUSSION

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Nebraska v. Wyoming, 507 U.S. 584, 590, 113 S. Ct. 1689, 1694, 123 L. Ed. 2d 317 (1993). The purpose of summary judgment "is to isolate and dispose of factually unsupported claims or defenses." Celotex Corp. v. Catrett, 477 U.S. 317, 323-24, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986). The burden of demonstrating that no factual dispute exists is on the moving party. Id. at 323. Once the moving party has met this burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). In deciding a motion for summary judgment, a court must resolve all ambiguities and draw all reasonable inferences in favor of the party opposing the motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Summary judgment should be granted only when no reasonable trier of fact could find in favor of the nonmoving party. Gallo v. Prudential Residential Services, Ltd., 22 F.3d 1219, 1224 (2d Cir. 1994).

---

[4]Convolve asserts as damages demanded for Seagate's Misappropriation of Convolve's Trade Secrets (8th Claim for Relief): (1) a royalty for the Input Shaping® trade secrets in the range of approximately $1.00 to $3.00 per disk drive, or 1.0% to 3.0% of revenues per disk drive; and (2) a royalty for the Quick and Quiet® trade secrets in the range of approximately $1.00 to $5.00 per product. Convolve also offers Seagate's unjust enrichment resulting from "its misappropriation of Convolve's trade secrets" as an alternative damages measure. Convolve further requests punitive damages "based upon Seagate's willful, malicious, and intentional conduct," including:
> (1) *Seagate's willful misappropriation of Convolve's technologies for Seagate's use*, corporate advantage and profit; (2) Seagate's proposal of an industry standard to the ANSI T13 Committee that was made through the use of Convolve's *misappropriated* technologies. . .
> Dallmann Decl., Ex. 10 at 8-9 (emphasis added).

Convolve asserts as damages demanded for Seagate's Breach of the Covenant of Good Faith and Fair Dealing, Breach of Confidence, Tortious Interference with Contract, and Fraud claims *the exact same royalty-based measures* as asserted in its misappropriation of trade secrets claim. See id. at 12-14, 16, 18 (emphasis added). Convolve also requests damages based on unjust enrichment from *misappropriation of Convolve's trade secrets* with respect to its Breach of Confidence claim; and punitive damages with respect to Convolve's Breach of Confidence, Tortious Interference, and Fraud claims for the same six enumerated reasons given for the punitive damages sought based on its Misappropriation of Trade Secrets claim, including "*Seagate's willful misappropriation of Convolve's technologies for Seagate's use* . . ." See id. at 9, 14-15, 17, 19 (emphasis added). Finally, Convolve requests relief for its statutory unfair competition claim based on wrongful acts " including "*misappropriating Convolve's trade secrets*." Id. at 20 (emphasis added).

## A. Preemption[5]

Seagate contends that Convolve's breach of confidence, fraud, breach of the covenant of good faith and fair dealing, tortious interference with contract, and statutory unfair competition causes of action are all preempted under California trade secret law and should therefore, be dismissed. Seagate argues that these causes of action each "shares the same factual basis, arises from the same alleged injury, and requests the identical damages remedy" as Convolve's comparable trade secret misappropriation causes of action. See Seagate Technology LLC's Mem. of Law in Supp. of its Mot. for Summary Judgment on Pl. Convolve, Inc.'s Preempted Causes of Action ("Seagate Mem. on Preempted Causes of Action") at 1. According to Seagate, Convolve's breach of confidence, fraud, tortious interference with contract, breach of covenant of good faith and fair dealing, and unfair competition claims are subject to preemption because they all arise from an identical nucleus of facts and are based on the claim that Seagate improperly utilized Convolve's proprietary information.

Convolve argues that Seagate's failure to plead preemption as an affirmative defense in either its answer or amended answer means they have waived that defense pursuant to Fed. R. Civ. P. 8(c). Plaintiff further contends that "Seagate has not discharged its burden of establishing its preemption defense as a matter of law" pursuant to Fed. R. Civ. P. 56(c). See Pl. Convolve Inc.'s Mem. of Law Opp. Def. Seagate Technology LLC's Summary Judgment Mot. on its Unpleaded Preemption Affirmative Def. ("Convolve Opp. on Preemption") at 1. Moreover, Convolve asserts that Seagate has misconstrued the California UTSA which "specifically preserves, and does not displace, Convolve's state law claims." Id.

---

[5]The Massachusetts Institute of Technology has no interest in Convolve's alleged trade secrets and is therefore not a plaintiff with respect to Convolve's trade secret misappropriation claims.

1. <u>Waiver of Affirmative Defense</u>

Rule 8(c) of the Federal Rules of Civil Procedure requires responsive pleadings to set forth certain enumerated affirmative defenses as well as "any other matter constituting an avoidance or affirmative defense." Fed. R. Civ. P. 8(c); <u>see</u> <u>also</u> <u>Saks v. Franklin Covey Co.</u>, 316 F.3d 337, 350 (2d Cir. 2003). "Preemption is a defense in the nature of avoidance which falls within the realm of Rule 8(c)." <u>Heller v. Delta Airlines, Inc.</u>, 1993 WL 330093 *1 (S.D.N.Y. Aug. 25, 1993) (internal citations omitted). However, Seagate's failure to plead preemption as an affirmative defense is not a bar to considering the merits of its affirmative defense. The Second Circuit Court of Appeals has held that a district court can consider the merits of an affirmative defense raised for the first time at the summary judgment stage, as long as the plaintiff has had an opportunity to respond. <u>See</u> <u>Astor Holdings, Inc. v. Roski et al.</u>, 325 F. Supp.2d 251, 260-61 (S.D.N.Y. 2003) (citing <u>Curry v. City of Syracuse</u>, 316 F.3d 324, 330-31 (2d Cir. 2003); <u>see</u> <u>also</u> <u>Saks</u>, 316 F.3d at 350 ("notwithstanding a defendant's failure to timely plead the preemption defense, a district court may still entertain affirmative defenses at the summary judgment stage in the absence of undue prejudice to the plaintiff, bad faith or dilatory motive on the part of the defendant, futility or undue delay of the proceedings"). Convolve has had an opportunity to respond to Seagate's preemption defense, and has in fact responded. Moreover, Seagate argues that "without the benefit of extensive discovery, Seagate could not have known. . .that each of Convolve's preempted causes of action were redundant of its trade secret claim." Seagate Technology LLC's Reply Mem. of Law in Supp. of its Mot. for Summary Judgment on Pl. Convolve, Inc.'s Preempted Causes of Action ("Seagate Preemption Reply") at 13. Accordingly, Seagate's motion for summary judgment based on preemption will be considered on its merits.

2. <u>The California Uniform Trade Secrets Act</u>

California law, specifically the California Uniform Trade Secrets Act ("California UTSA"), governs Convolve's trade secret cause of action.[6] "The stated purpose of the [California] UTSA is to provide 'unitary definitions of trade secret and trade secret misappropriation, and a single statute of limitations for the various property, quasi-contractual, and violation of fiduciary relationship theories of noncontractual liability utilized at common law." American Credit Indem. Co. v. Sacks, 213 Cal. App. 3d 622, 630, 262 Cal. Rptr. 92 (1989). California has adopted without significant change the Uniform Trade Secrets Act. DVD Copy Control Assoc., Inc. v. Bunner, 31 Cal. 4th 864, 874 (2003). Under the California UTSA, a "trade secret" means information that:

> (1) Derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.
> Cal. Civ. Code § 3426.1(d).

The California UTSA's preemption clause reads, in relevant part:

> (a) Except as otherwise expressly provided, this title does not supercede any statute relating to misappropriation of a trade secret, or any statute otherwise regulating trade secrets.
>
> (b) This title does not affect (1) contractual remedies, whether or not based upon misappropriation of a trade secret, (2) other civil remedies that are not based upon misappropriation of a trade secret . . .[7]

Although § 3426.7 is "negatively expressed" and does not use the word "preemption," § 3427.7(b)(2) has been interpreted as having a broad preemptive effect similar to the model UTSA. See Ernest Paper Prods., Inc. v. Mobil Chem. Co., 1997 U.S. Dist. LEXIS 21781, at *21-23, *28 (C.D. Cal. Dec. 2, 1997) (interpreting § 3426.7(b)(2) broadly to preempt intentional interference with economic relationships and

---

[6] The NDA signed by Seagate and Convolve states that "[t]his Agreement will be governed under the laws of the State of California, without regards to its conflict laws principles." Dallmann Decl., Ex. 1 ¶ 13.4. On July 28, 2000 then presiding Judge John S. Martin, Jr., held a hearing on the choice-of law issue in the instant action. While Seagate argued that the California UTSA governed the trade secret cause of action against it, Convolve "maintained that New York law governed its state law claims." Convolve Opp. on Preemption at 20. In Convolve, Inc. v. Compaq Computer Corp., 2002 U.S. Dist. LEXIS 69 ** 1-2 (S.D.N.Y. Jan. 2, 2002), Judge Martin held that California substantive law governs Convolve's state law claims against Seagate. This choice of law decision is the controlling law of the case. See also Convolve Opp. on Preemption at 20-22.

[7] Cal. Civ. Code § 3426.7. The Model Uniform Trade Secrets Act's ("Model UTSA") preemption clause "displaces conflicting tort, restitutionary, and other law of the State providing civil remedies for misappropriation of a trade secret" subject to certain exceptions enumerated in its § 7(b) savings clause. Model UTSA §§ 7(a)-(b).

unfair competition pursuant to Cal. Bus. & Prof. Code § 17200, *et seq.* causes of action based on trade secret misappropriation).

The California UTSA preempts all common law claims that are based on an allegation of misappropriation of trade secrets. See Accuimage Diagnostics Corp. v. Terarecon, Inc., 260 F.Supp.2d 941, 954 (N.D.Cal. 2003) (holding that plaintiff's common law claim for misappropriation of trade secrets was preempted by the California UTSA); Callaway Golf Co. v. Dunlop Slazenger Group Americas, Inc., 318 F.Supp.2d 216, 219-20 (D.Del. 2004) (holding that common law claims based on misappropriation of trade secrets are preempted under California law).

3. Tort Claims: Breach of Confidence, Fraud, and Tortious Interference with Contract

The California UTSA, like other UTSAs, preempts all claims based on misappropriation of trade secrets that are not specifically exempted by its § 3426.7(b) savings clause. See Digital Envoy, Inc. v. Google, Inc., 370 F.Supp.2d 1025, 1033 (N.D.Cal. 2005) ("there would be no need for inclusion of this provision [§ 3426.7] in California's statutory scheme unless the UTSA preempted other claims based on misappropriation"). The preemption inquiry for those causes of action not specifically exempted by § 3426.7(b) focuses on whether "other claims are no more than a restatement of the same operative facts" supporting trade secret misappropriation. See Penalty Kick Mgmt. Ltd. v. Coca Cola Co., 318 F.3d 1284, 1298 (11th Cir. 2003); see also Allegiance Healthcare Corp. v. Coleman, 232 F.Supp.2d 1329, 1335-36 (S.D.Fla. 2002). "In analyzing claims for the purpose of applying the displacement provision, the issue is not what label the plaintiff puts on their claims. Rather, the court is to look beyond the label to the facts being asserted in support of the claims." Weins v. Sporleder, 605 N.W. 2d 488, 491 (S.D. 2000). If there is no "material distinction" between the wrongdoing alleged in a UTSA claim and that alleged in a different claim, the UTSA preempts the other claim. See Allegiance Healthcare, 232 F.Supp.2d at 1336.

In its opposition, Convolve has not offered any evidence that the claims at issue can be differentiated from its trade secret claim. Instead, Convolve simply states that its claims are supported

11

by facts unrelated to the misappropriation of its trade secrets. See Convolve Opp. on Preemption at 31. The allegations, causes of action, and prayer for relief in Convolve's Amended Complaint, as well as its answers to Seagate's interrogatories concerning damages, belie this assertion. Convolve's entire action against the defendants is based on its allegation that the defendants, in violation of the NDAs, misappropriated Convolve's "confidential and/or trade secret information" by stealing Convolve's disk drive technologies. Throughout the Amended Complaint Convolve emphasizes and reiterates this wrongful use of "confidential and/or trade secret information" in each claim for relief, including its trade secret misappropriation cause of action, as well as those causes of action Seagate argues are preempted. All of Convolve's claims arise out of the same nucleus of facts as Convolve's trade secret misappropriation cause of action. Indeed, the main measure of damages asserted by Convolve for each cause of action is calculated based on "a reasonable royalty for the Input Shaping® *trade secrets* . . . [and] the Quick and Quiet™ *trade secrets*." See Dallmann Decl., Ex. 10 at 8-9, 14, 16, 18 (emphasis added). All of the information identified by Convolve and placed at issue in its Amended Complaint is deemed "confidential and/or trade secret information."

"The [UTSA] does not . . . simply preempt common law claims for which misappropriation of a trade secret is an element." See Bliss Clearing Niagara, Inc. v. Midwest Brake Bond Co., 270 F.Supp.2d 943, 948 (W.D. Mich. 2003). Instead, the UTSA preemption clause is meant to eliminate all common law claims that are based on the same conduct which could support a UTSA cause of action. Id. "In other words, if the operative facts are arguably cognizable under the [UTSA], any common law claim that might have been available on those facts in the past now no longer exists . . . ." Id. The alleged facts underlying the common law claims in the instant case are indistinguishable from plaintiff's trade secret claim. See, e.g., Digital Envoy, 370 F.Supp.2d at 1035 (preempting plaintiff's claims for unfair competition and unjust enrichment "since those claims are based on the same nucleus of facts as the misappropriation of trade secrets claim for relief"); Callaway Golf, 318 F. Supp.2d at 219 (concluding that all state law claims based on the same nucleus of facts as the trade secrets claim are preempted

12

under the California UTSA); Allegiance Healthcare, 232 F.Supp.2d at 1336 (preempting plaintiff's unfair competition claim that was based on defendants' use of the "trade secrets, confidential information, and other information" because such claim was indistinguishable from plaintiff's trade secret claim that was based on defendants' use of the "trade secrets and/or confidential and proprietary information"); Frantz v. Johnson, 116 Nev. 455, 464-65 (2000) (finding that the district court should not have awarded damages based on a number of plaintiff's civil claims, including misappropriation of confidential information, breach of fiduciary duty, intentional interference with contractual relations, intentional interference with prospective advantage, and unjust enrichment because they all arose "from a single factual episode").

The California UTSA preempts Convolve's claims for tortious interference with contract/prospective economic advantage, fraud, and breach of confidence since those claims arise from the same nucleus of facts as Convolve's misappropriation of trade secrets cause of action. Accordingly, Seagate's motion for summary judgment on Convolve's fourth, sixth, and twelfth claims for relief is granted.

    4. Unfair Competition

Convolve attempts to distinguish its eleventh claim for relief pursuant to California Business and Professions Code § 17200 *et seq.* by arguing that it is a statutory claim exempted from preemption by § 3426.7(a). Enacted in 1977, the Cal. Bus. & Prof. Code prohibits an "unlawful, unfair or fraudulent business act or practice and unfair deceptive, untrue or misleading advertising." The statute provides it own remedial scheme which is "cumulative to each other and to the remedies or penalties available under all other laws of this state." Cal. Bus. & Prof. Code §§ 17200, 17203, 17205. It is not, however, a "statute relating to misappropriation of a trade secret, or any statute otherwise regulating trade secrets" within the meaning of Cal. Civ. Code § 3426.7(a). Convolve's eleventh claim for relief is another civil remedy which is preempted and displaced under the 1984 California UTSA unless it is "not based upon misappropriation of a trade secret." See Cal. Civ. Code § 3426.7(b)(2); see also Ernest Paper, 1997 U.S.

Dist. LEXIS 21781 at *28 (preempting plaintiff's unfair competition action under § 17200 *et seq.* since the alleged facts were based solely upon misappropriation).

In its eleventh cause of action, Convolve seeks injunctive relief – the only relief available under Cal. Bus. & Prof. Code § 17200 *et seq.* – based on ten enumerated "wrongful acts and conduct" constituting "unfair competition." See Dallmann Decl., Ex. 10 at 19-20. This wrongful conduct is primarily Seagate's "misappropriating Convolve's *trade secrets*." Id. at 20 (emphasis added). As with Convolve's preempted fourth, sixth, and twelfth claims, Convolve's unfair competition cause of action arises out of the same nucleus of operative facts as its misappropriation of trade secrets claim. Therefore, Convolve's eleventh claim for relief is also preempted under the California UTSA. Accordingly, Seagate's motion for summary judgment on Convolve's unfair competition claim under California Business and Professions Code § 17200 *et seq*. is granted.

5. Breach of the Covenant of Good Faith and Fair Dealing

Convolve's Fourteenth Claim for relief in its Amended Complaint asserts that the "Seagate NDA contains an implied covenant of good faith and fair dealing" and that ". . .Seagate has frustrated Convolve's rights to the benefits of the Seagate NDA, and violated the covenant of good faith and fair dealing in the Seagate NDA." Amended Complaint at ¶¶ 136-37. Convolve argues that this is a "contractual remedies" claim which is not subject to preemption under section 3416.7(b)(1) whether or not it is based upon misappropriation of a trade secret. Convolve Opp. on Preemption at 25-26. Seagate contends that Convolve's claim is a tort based upon its trade secret cause of action. Rather than sounding in contract, Seagate argues that it is a tort claim subject to preemption. Seagate Preemption Reply at 9-10.

It is well settled that, in California, the law implies in every contract a covenant of good faith and fair dealing. 1 Witkin, Summary of Cal. Law (8th ed. 1973) Contracts, § 576, p. 493 (hereinafter Witkin); see e.g., Freeman & Mills, Inc. v. Belcher Oil Co., 11 Cal. 4th 85, 91 (1995); Seaman's Direct Buying Service, Inc. v. Standard Oil Co., 36 Cal. 3d 752, 768, 686 P.2d 1158, 1166 206 Cal. Rptr. 354,

14

362 (1984); Egan v. Mutual of Omaha Ins. Co. 24 Cal.3d 809, 881, 620 P.2d 141, 169 Cal. Rptr. 691 (1979). Broadly stated, the covenant of good faith and fair dealing requires that neither party do anything which will deprive the other of the benefits of the agreement. Witkin at 493. While "California courts have consistently stated that a claim for breach of the covenant of good faith and fair dealing is a hybrid claim, sounding in both contract and tort," the implied covenant supports tort remedies only when it is implied into insurance policies. See, e.g., Mosten Management Co., Inc. v. Zurich-American Ins. Group, 1996 WL 183040 *2 (N.D.Cal. Apr. 10, 1996). "[A]ll other types of covenants of good faith and fair dealing support only contract remedies and defenses." Id. (citing Freeman & Mills, 11 Cal. 4th 85 (establishing a "general rule precluding tort recovery for noninsurance contract breach, at least in the absence of violation of 'an independent duty arising from principles of tort law' other than the bad faith denial of the existence of, or liability under, the breached contract") (citations omitted)). Convolve's fourteenth cause of action is a contractual claim which the California UTSA expressly allows, whether or not based on trade secret misappropriation. See Cal. Civ. Code § 3426.7(b)(1); see also Trade Secrets Practice in California (2d ed. 2004) at § 11.35.[8]

Seagate's reliance on Frantz v. Johnson, interpreting an almost identical provision in the Nevada UTSA, to support its argument that Convolve's fourteenth claim is actually a tort which should be preempted is misplaced. The Supreme Court of Nevada, actually concluded that "the district court did not err in awarding damages based on the contractual remedy of breach of the covenant of good faith and fair dealing" since such a covenant is implied in every Nevada contract and is explicitly not displaced by the Nevada UTSA even if it is based upon misappropriation of trade secrets.[9] Frantz, 116 Nev. at 465 n.4. Accordingly, Seagate's motion for summary judgment on Convolve's claim for breach of the covenant of good faith and fair dealing is denied.

---

[8]Seagate also argues in its brief that Convolve's covenant of good faith and fair dealing claim would be subsumed under its breach of contract claim. Whether Convolve may proceed to trial on both theories need not be decided at this time.

[9]The Frantz court did, however, find that the district court should have preempted the plaintiff's *tort* of the breach of the covenant of good faith and fair dealing, along with a number of other tort or restitutionary actions based upon misappropriation of a trade secret since the Nevada UTSA specifically preempts them. Frantz, 116 Nev. at 464-65.

**B. Convolve's Claim of Misappropriation of Alleged Trade Secret 3D**

Convolve has accused Seagate of misappropriating alleged trade secret number 3D ("3D") as identified in its Amended Trade Secret Identification ("ATSI"). What Seagate has labeled as trade secret 3D, Convolve maintains is "subpart d [of Trade Secret 3]." See id. at 15; see also Pl. Convolve, Inc.'s Mem. of Law Opp. Def. Seagate Technology LLC's Defective Mot. for Partial Judgment on Convolve's Claim for Trade Secret Misappropriation (Addressing Trade Secret 3, Subpart d) "Convolve Opp. on 3D") at 4. This Court ruled that Convolve's ATSI "satisfies § 2019(d) of the California Civil Procedure Code . . . ." See Convolve, Inc. v. Compaq Computer Corp., 2002 U.S. Dist. LEXIS 69 at *1 (S.D.N.Y. Jan. 2, 2002). This ruling and the Court's related application of California law to Convolve's claim of trade secret misappropriation against Seagate constitute the law of the case. Convolve alleges that on April 7, 1999 it disclosed to Seagate the information described in trade secret 3, including 3D, pursuant to the NDA between the parties.

Seagate argues that Convolve cannot make out a prima facie case under the California UTSA for trade secret misappropriation with respect to alleged trade secret 3D because Convolve cannot prove improper use and that summary judgment is therefore appropriate. See Celotex, 477 U.S. at 322-23 ("The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-86 (1986) (granting summary judgment because none of the evidence raised a genuine issue regarding one element of the claim). Specifically, Seagate argues that Convolve cannot make out a prima facie claim for misappropriation of trade secrets under the California UTSA[10] because (1) Seagate independently knew about 3D long before Convolve's alleged discovery and thus could not misappropriate alleged trade

---

[10] A prima facie claim for misappropriation of trade secrets under the California UTSA requires the plaintiff to demonstrate: (1) it owned a trade secret, (2) the defendant acquired, disclosed, or used its trade secret through improper means, and (3) the defendant's actions damaged the plaintiff. See Sargent Fletcher, Inc. v. Able Corp., 3 Cal. Rptr. 3d 279, 283 (Cal. Ct. App. 2003); see also§ A. 2. "The California Uniform Trade Secrets Act" infra.

16

secret 3D; (2) alleged trade secret 3D was known in the disk drive industry long before Convolve's alleged conception; and (3) Seagate has never used Convolve's alleged trade secret. See Seagate Mem. on 3D at 11-12. Seagate argues that "[i]n such a situation there can be no 'genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial [and] [t]he moving party is 'entitled to a judgment as a matter of law.'" Celotex, 477 U.S. at 322-23.

Convolve opposes Seagate's summary judgment motion on three main grounds. See, e.g., Convolve Opp. on 3D at 1-3. First, Convolve argues that the Court has no authority under Fed. R. Civ. P. 56(b) to grant "partial judgment . . .as to Trade Secret 3, subpart d – i.e., less than the entire Eighth Claim for trade secret misappropriation." Id. at 1, 20-21. Second, Convolve contends that Seagate's summary judgment motion is premature and should be denied pursuant to Fed. R. Civ. P. 56(f) since Seagate's motion is "premised on expert-intensive issues and filed before expert discovery has begun." Id. at 1, 21-23. Finally, Convolve argues that Seagate's summary judgment motion must also be denied on its merits since a number of genuine issues of material fact exist. Id. at 2-3, 23-34. According to Convolve, Seagate's motion places at issue: (1) the proper characterization of 3D; (2) whether 3D was generally known or known to Seagate before Convolve disclosed it to Seagate; and (3) whether Seagate used 3D. Id. at 2. Genuine issues of disputed fact exist warranting denial of summary judgment.[11]

A prima facie claim for misappropriation[12] of trade secrets under the California UTSA requires Convolve to demonstrate: (1) that it owned trade secret 3D, (2) that Seagate acquired, disclosed, or used

---

[11]Convolve's arguments that summary judgment is inappropriate on part of its claim and is premature need not be discussed.

[12] "Misappropriation" means: "(1) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or (2) Disclosure or use of a trade secret of another without express or implied consent by a person who: (A) Used improper means to acquire knowledge of the trade secret; or (B) At the time of disclosure or use, knew or had reason to know that his or her knowledge of the trade secret was: (i) Derived from or through a person who had utilized improper means to acquire it; (ii) Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or (iii) Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or (C) Before a material change of his or her position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake." Cal. Civ. Code § 3426.1(b).

17

trade secret 3D through improper means[13], and (3) that Seagate's actions damaged Convolve. See, e.g., Sargent Fletcher, Inc. v. Able Corp., 3 Cal. Rptr. 3d 279, 283 (Cal. Ct. App. 2003). If Convolve has failed to make a sufficient showing on any of these essential elements of its prima facie case for misappropriation of trade secret 3D, Seagate is entitled to judgment as a matter of law. See Celotex, 477 U.S. at 323; Matsushita, 475 U.S. at 586. Once Seagate has shown that Convolve has adduced no evidence in support of any essential element, Convolve must come forward with competent evidence of the existence of a genuine fact issue. See Matsushita, 475 U.S. at 587. Indeed, Convolve must "do more than simply show that there is some metaphysical doubt as to the material facts." Id. at 586. Convolve must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256.

While Seagate states that "Convolve cannot meet its burden on any of these elements [for misappropriation of a trade secret]," its three arguments all focus on the second element of misappropriation – improper use. See Seagate Mem. on 3D at 12. Namely, Seagate argues that: (1) it could not misappropriate trade secret 3D because Seagate independently knew about and developed 3D long before Convolve's alleged discovery; (2) 3D was known in the disk drive industry long before Convolve's alleged conception; and (3) Seagate has never used Convolve's trade secret 3D. Id. Therefore, Seagate argues that summary judgment must be granted with respect to 3D since the uncontroverted evidence clearly demonstrates that Seagate did not improperly use Convolve's confidential and proprietary information.

Plaintiff, however, has come forward with sufficient evidence demonstrating the existence of material issues of fact with respect to whether Seagate improperly used Convolve's proprietary information. A genuine factual dispute exists concerning Seagate's knowledge of the problem and its possible solution prior to Convolve's disclosure of its proprietary information. Convolve has also

---

[13] "Improper means" includes "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means. Reverse engineering or independent derivation alone shall not be considered improper means." Cal. Civ. Code § 3426.1(a).

18

proffered disputed evidence that Seagate used Convolve's proprietary information in some of its accused disk drives. See, e.g., Bell Decl. at ¶¶ 31-33. This evidence directly disputes Seagate's contention that it never improperly used Convolve's proprietary information. The evidence proffered by Convolve in response to Seagate's summary judgment motion on 3D establishes that genuine issues of material fact exist concerning (1) whether or not 3d was either generally known or known to Seagate prior to Convolve's disclosure of 3D; (2) whether Seagate independently developed 3D; and (3) whether Seagate improperly used Convolve's proprietary information described in 3D. Thus a material dispute of fact exists as to whether or not Seagate utilized Convolve's confidential proprietary information in the development of Seagate's disk drive technology. Accordingly, Seagate's motion for summary judgment on alleged trade secret 3D is denied.

## CONCLUSION

Seagate's motion for summary judgment dismissing Convolve's fraud, tortious interference with contract, breach of confidence, and unfair competition causes of action is granted.

Seagate's motion for summary judgment on Convolve's breach of the covenant of good faith and fair dealing is denied.

Seagate's motion for summary judgment on Convolve's claim of misappropriation of alleged trade secret 3D is denied.

Dated: New York, New York
March 28, 2006

SO ORDERED:

*George B. Daniels*

GEORGE B. DANIELS
United States District Judge